**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

LARRY D. GRIFFIN                                                                           PLAINTIFF

v.                                                 No. 4:13CV00251 JLH

RICHARD WEISS, in his official capacity
as Director of the Arkansas Department
of Finance and Administration; and
ANDY MORGAN, in his official
and individual capacities                                               DEFENDANTS

**OPINION AND ORDER**

Following his termination from the Arkansas Department of Finance and Administration ("DF&A"), Larry Griffin brought this action against Richard Weiss in his official capacity as Director of the DF&A and Andy Morgan in his official and individual capacities. Griffin alleges violations of the Americans With Disabilities Act, 42 U.S.C. § 2601, and the Family Medical Leave Act, 29 U.S.C. § 12101. The defendants have filed a motion for summary judgment, the plaintiff has responded, and the defendants have replied. For the following reasons, the defendants' motion for summary judgment is granted.

**I.**

Griffin began his employment in the Office of Field Audit with the DF&A in 1986. He started as a Tax Auditor Trainee and was promoted first to Tax Auditor I and then to Tax Auditor II. Document #38-1 at 3 ¶ 8. Griffin worked in the Central Division. Document # 38-1 at 3 ¶ 9. His supervisors included Andy Morgan, who was promoted to manager in 2007, and Guy Meneley beginning in 2009. Document #38-3 at 2. Tax Auditors are responsible for conducting audits of individual and corporate taxpayers. Document #38-1 at 2 ¶ 4. They often travel to taxpayers' homes or places of business to complete audits. *Id.* A tax auditor is required to prepare a weekly itinerary

stating each place that he will be located when he is not in the district office during office hours. *Id.*

Tax Auditors are subject to the Field Audit Personnel Work Rules and Administrative Memorandum 300.22. *Id.* at 2 ¶ 5; Document #38-2 at 1; Document #38-4. These rules include provisions stating that office hours are from 8:00 a.m. to 4:30 p.m.; an employee must submit a weekly itinerary to his supervisor; an employee must notify his supervisor of his location at all times during working hours; and any employee who is on leave for part of the day must contact his supervisor prior to the expiration of the leave if he is going to take additional leave. Document #38-2 at 1 ¶¶ 1, 6, 7. Failure to comply with the rules is a basis for disciplinary action and may result in immediate termination. *Id.* at 2 ¶ 16. A four-step disciplinary process exists for violations of the rules leading up to termination. Document #38-4. A more severe disciplinary action, including immediate dismissal, may be implemented depending on the severity of the offense. Document #38-1 at 3 ¶ 6.

Griffin violated these policies twice – first on January 13, 2012, and again on July 27, 2012. Documents #38-10 and #38-11.

In January 2012, Griffin submitted a weekly itinerary stating he would be at a taxpayer's place of business on January 13, but when a supervisor conducted a field check, he was not present and did not have authorized leave. Document #38-10. His manager, Andy Morgan, and other administrators determined that Griffin violated the Field Audit Personnel Work Rules and Administrative Memorandum 300.22. Document #38-1 at 4 ¶ 11. This incident resulted in an escalated disciplinary action of suspension without pay for five days and a warning that another violation would result in termination. *Id.*

In July 2012, Griffin requested leave for orientation for jury duty the morning of July 27, and his weekly itinerary stated he would be at the district office following jury duty. Document #38-12; Document #38-3 at 36.  On the morning of July 27, Griffin drove to jury orientation at the Pulaski County Courthouse, as scheduled, after waking up with a headache and not feeling well.  Document #38-3 at 37-38.  Jury orientation began at 8:00 a.m. and concluded by 9:30 a.m., during and after which Griffin felt nervous and had a headache.  Document #38-3 at 40-41; Document #38-11.  After jury orientation concluded, Griffin did not go to the district office as his itinerary stated; rather, he drove home without contacting his employer.  Document #38-3 at 40.  Griffin then slept until approximately 11:00 a.m.  Document #38-3 at 44-46.  He called the DF&A to request additional leave at 1:51 p.m.  *Id.*  He spoke with Dale Brashears and requested leave for the remainder of the day because he "wasn't feeling well."  *Id.* at 46-47.  Prior to this call, Morgan and another DF&A employee had driven to the Pulaski County Courthouse to conduct a field check and discovered that Griffin was not there.  Document #38-1 at 5 ¶ 12.

Griffin took off from work on Monday, July 30, 2012, due to car trouble, and he took another day of annual leave on Tuesday, July 31, 2012.  He returned to work on August 1, 2012.  He did not seek medical treatment at any time from July 27, 2012, through August 1, 2012.  Document #38-3 at 48, 50, 52, 63.

Upon returning to work on August 1, 2012, Griffin met with Morgan and another DF&A employee to discuss disciplinary action.  *Id.* at 54.  At this time he informed them that he had driven home from jury orientation because he was nervous and had a headache.  *Id.* at 56-57.  They requested proof of medical treatment for July 27.  Document #38-1 at 5 ¶ 13.  At Griffin's request, his doctor, Dr. Gil Foster, sent a one-sentence note "to verify that Mr. Griffin is under our care for his mood disorder."  Document #38-13; Document #44-2 at 135.

3

Griffin was terminated on August 2, 2012, for violating the Field Audit Work Rules and Administrative Memorandums.  Documents #38-14 and #44-2 at 104.

## II.

A court should grant summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The moving party bears the initial burden of demonstrating the absence of a genuine dispute for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).  If the moving party meets that burden, the nonmoving party must come forward with specific facts that establish a genuine dispute of material fact.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).  A genuine dispute of material fact is presented only if the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  The court must view the evidence in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences that can be drawn from the record.  *Spencer v. Jackson Cnty. Mo.*, 738 F.3d 907, 911 (8th Cir. 2013).  If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, then the moving party is entitled to judgment as a matter of law.  *Celotex Corp.*, 477 U.S. at 322-23, 106 S. Ct. at 2552.

## III.

Griffin concedes that the claim against Morgan in his individual capacity and his monetary claims against Weiss and Morgan in the official capacities for violating the ADA should be

dismissed. He also concedes that his official capacity claims for monetary damages for violating the FMLA should be dismissed. Document #45 at 12. Therefore, all of those claims are dismissed.

The ADA and FMLA claims remaining are for injunctive, prospective or declaratory relief against Morgan and Weiss in their official capacities. The FMLA claim against Morgan in his individual capacity also remains in dispute.

**A.     ADA Discrimination Claim**

To establish an ADA claim, Griffin must show that (1) he is a disabled person under the statute, (2) he is a qualified individual and (3) he was terminated because of his disability. *Nyrop v. Indep. Sch. Dist. No. 11*, 616 F.3d 728, 733 (8th Cir. 2010).

The undisputed facts establish that Griffin was not terminated because of a disability: he was terminated because he violated the Field Audit Personnel Work Rules and the Administrative Memorandum 300.22. It is undisputed that Griffin violated DF&A's rules on January 13, 2012, when he stated in a weekly itinerary that he would be at a taxpayer's place of business but he did not go there. It is undisputed that he was suspended without pay for five days and warned that another violation would result in termination. It is undisputed that his weekly itinerary stated that on July 27, 2012, he would attend jury duty and then report to the district office. It is undisputed that he left jury duty at 9:30 a.m. and drove home; he did not report to the district office. It is undisputed that he did not call the district office until nearly 2:00 in the afternoon, when he stated that he was planning to take the rest of the day off. These undisputed facts show that Griffin committed a second violation of DF&A policies on July 27, 2012, seven months after being warned that a second violation would result in termination.

Griffin contends the delay in notifying his employer on July 27, 2012, was due to his medical condition, but no medical evidence supports that contention. No medical evidence supports the

assertion that Griffin had a disability that kept him from being able to place a telephone call to his employer. Indeed, he was able to operate a motor vehicle on a highway. No jury could reasonably conclude that he was unable to make a telephone call.

Even if Griffin established a prima facie case under the ADA, his claim would fail. Once a plaintiff shows a prima facie case, the defendant bears the burden to articulate a "non-discriminatory, legitimate justification for its conduct." *Pickens v. Soo Line R.R. Co.*, 264 F.3d 773, 778 (8th Cir. 2001). DF&A has met that burden. The burden therefore shifts back to Griffin to show the justification was merely pretext for discrimination. *Id.* at 777. Griffin has presented no evidence from which a jury reasonably could conclude that the stated reason for his termination was a pretext for discrimination.

**B.     ADA Accommodation Claim**

If an employee fails to request an accommodation, an employer has no duty to provide one. *Buboltz v. Residential Advantages, Inc.*, 523 F.3d 864, 870 (8th Cir. 2008) (abrogated on other grounds by *Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011)). When a mental disability is involved that is "not open, obvious, and apparent to the employer . . . *the initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitation, and to suggest the reasonable accommodations*." *Wallin v. Minn. Dep't of Corr.*, 153 F.3d 681, 689 (8th Cir. 1998) (quoting *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 165 (5th Cir. 1996) (emphasis added in *Wallin*)). The employee needs to make the connection between the requested accommodation and the disability. *Id.*

DF&A maintains an ADA Compliance policy pursuant to which an employee can submit a request to a supervisor. Document #38-17. Griffin neither followed the policy nor verbally requested an accommodation between 2007 and his termination in 2012. Document #38-1 at 6 ¶ 17.

6

Griffin stated that he requested accommodations in the form of sick leave due to the nature of his illness. No facts support the assertion that his supervisors knew that his previous absences gave notice that he needed an accommodation due to a disability. Griffin never mentioned his depression or mood disorder when he requested his absences. Although Griffin took FMLA leave in 2007 for depression, he never made the connection between his depression and the subsequent absences from work when he used annual or sick leave. The FMLA leave documentation indicates that the FMLA leave lasted until December 2007, while treatments continued longer. Griffin admits that between 2007 and his termination he did not discuss his medical condition with his supervisors, provide medical documentation or discuss any resulting limitations. On the EEOC Intake Questionnaire, Griffin checked the box for "no" in response to the question: "Did you ask your employer for any changes or assistance to do your job because of your disability?" Document #44-2 at 99. By Griffin's own admission, he made no accommodation request. DF&A had no duty to accommodate Griffin because he made no request for an accommodation and it was not readily apparent that he needed one.

Furthermore, Griffin failed to exhaust his administrative remedies with the EEOC because he did not include an accommodation claim in his EEOC charge. "As with Title VII, the filing of a charge with the EEOC is a prerequisite to any private action under Title I of the ADA." I Employment Discrimination Law 13-232 (Barbara T. Lindemann, Paul Grossman, & C. Geoffrey Weirich eds., 5th ed. 2012) (citing 42 U.S.C. § 12117(a) (incorporating § 2000e–5)). The claim filed with the EEOC must provide sufficient notice to exhaust administrative remedies. *Russell v. TG Mo. Corp.*, 340 F.3d 735, 748 (8th Cir. 2003). "A plaintiff will be deemed to have exhausted administrative remedies as to allegations contained in a judicial complaint that are like or reasonably

related to the substance of charges timely brought before the EEOC. *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 223 (8th Cir. 1994). Here, as noted above, Griffin answered "no" to the question on the EEOC Intake Questionnaire asking whether he had requested an accommodation. Thus, his "failure-to-accommodate claim is [not] within the scope of his administrative charge." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1187 (10th Cir. 2007).

**C.     FMLA**

The FMLA "entitle[s] employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(2). The employee must have a qualifying serious health condition. *Id.* § 2612(a)(1)(D). A mental illness may qualify as a serious health condition if it "continues over an extended period of time and requires periodic doctor's visits because of, or to prevent, episodes during which the employee cannot perform regular daily activities." *Rask v. Fresenius Med. Care N. Am.*, 509 F.3d 466, 472 (8th Cir. 2007). An entitlement claim requires the employee to have given notice to his employer of his need for FMLA leave. *See Bosley v. Cargill Meat Solutions Corp.*, 705 F.3d 777, 780 (8th Cir. 2013) (citing *Clinkscale v. St. Therese of New Hope*, 701 F.3d 825, 827 (8th Cir. 2012)). Although notice need not be given prior to taking unforeseeable FMLA leave, notice must still be given "as soon as practicable." 29 C.F.R. § 825.303(a). The employee need not explicitly state or refer to the FMLA when requesting leave, but must "provide[] enough information to put the employer on notice that the employee may be in need of FMLA leave." *Browning v. Liberty Mut. Ins. Co.*, 178 F.3d 1043, 1049 (8th Cir. 1999), *cert denied*, 528 U.S. 1050 (1999). The information provided should indicate that the health condition could be serious. *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990-91 (8th Cir. 2005). "Calling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under

the Act." 29 C.F.R. § 825.303(b). Because "depression" and "mood disorder" are such broad terms, Griffin needed to inform DF&A of more than the mere fact that he had been diagnosed with something called "depression" or "mood disorder" to put it on notice of a serious health condition. *See Rask*, 509 F.3d at 473.

Griffin claims that DF&A was placed on notice that he had a serious health condition because he had used FMLA leave in 2007 for depression. In November 2007, Griffin took FMLA leave until December 2007. Document #38-3 at 20-22; Document #38-1 at 6 ¶ 16. Neither Griffin nor his family discussed Griffin's medical condition with DF&A aside from identifying it as depression. Document #38-3 at 30. The FMLA documentation signed by Griffin's physician states that Griffin would need two to four treatments a month for a year, possibly longer. Document #44-4 at 2. It also states that he would not need to work on an intermittent schedule or less than full schedule due to the condition or the treatments. *Id.* at 1. Upon returning, Griffin did not discuss his medical condition or any limitations with his supervisors. Document #38-3 at 29-30. Between December 2007 and his termination, Griffin did not submit additional medical documentation or discuss his medical condition or limitations with his supervisors. *Id.* at 30; Document #38-1 at 6 ¶ 16. When Griffin took leave, he simply reported that he was taking the day off or stated that he was sick. Document #38-3 at 32-34. Griffin argues that the documentation in DF&A's possession indicated that his "condition would require periods of absence (and possibly hospitalization) as well as ongoing treatment." Document #45 at 10. No evidence supports this assertion. The request for the FMLA leave in 2007 indicates that the health condition commenced October 25, 2007, and continued through December 31, 2007, with treatments potentially going longer than a year, but that

the condition would not require him, upon return to work, to work intermittently or to work less than a full schedule. Document #44-4 at 1.

Although a previous use of FMLA may place an employer on notice to inquire further into absences in the future, alone it is not enough. *See Rask*, 509 F.3d at 472-73. On July 27, 2012, when Griffin called to report his absence, he informed the supervisor that he "wasn't feeling well." As noted, during the preceding years Griffin had not discussed the nature of his illness or requested any accommodations; nor when he called in for a day off did he inform his supervisors of the medical condition that precipitated his need for leave.

Viewing the evidence in the light most favorable to Griffin, the last time he informed DF&A of his depression occurred in 2007. Informing his supervisor that he "wasn't feeling well" on July 27, 2012 was not enough to place the burden of inquiry on DF&A.

Even if Griffin could show an FMLA claim, his employer had a legitimate reason for termination. "An employee who requests FMLA leave has no greater protection against termination for reasons unrelated to the FMLA than she did before taking the leave." *Estrada v. Cypress Semiconductor (Minn.) Inc.*, 616 F.3d 866, 871 (8th Cir. 2010). "If the employer can prove that it would have terminated the employee had the employee not exercised FMLA rights, the employer will not be liable." *Ballato v. Comcast Corp.*, 676 F.3d 768, 772 (8th Cir. 2012). DF&A terminated Griffin because, for the second time in eight months, he violated the rules requiring him to inform his supervisors of his location during work hours.

Griffin claims there was an informal policy of calling in after taking leave and points to Rosetta Giddens as a comparator as evidence of this policy. Griffin identified a comparator, Rosetta Giddens. Document #45 at 11. Giddens worked in the Southeast Division of the Office of Field

Audit under her manager Nora Smith. Document #44-3 at 15-16; 18-19. Giddens took leave without giving twenty-four hours notice. *Id.* at 40-41. At the pretext stage, a plaintiff must show that he and the comparator are similarly situated in all relevant respects. *Burton v. Ark. Sec'y of State*, 737 F.3d 1219, 1230 (8th Cir. 2013). The comparators must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct or conduct of comparable seriousness. *Id.* at 1230-31. Giddens was in a different division and worked under a different manager. She called in less than twenty-four hours prior to taking leave, but she did not fail to be where her weekly itinerary stated. Giddens is not similarly situated in all relevant respects.

Griffin was placed on notice in January 2012 that another violation of the rules requiring him to keep his supervisor informed of his location during work hours would result in his termination. On July 27, 2012, Griffin left jury duty at 9:30 a.m. and failed to report to the district office, which is where his weekly itinerary said he would be when his jury duty concluded. The field check found he was not at jury duty. In accordance with its policies, DF&A terminated Griffin as it previously had warned him it would do.

## CONCLUSION

Griffin cannot show that a genuine issue as to any material fact exists precluding summary judgment. The defendant's Motion for Summary Judgment is granted on both the ADA and FMLA claims against all defendants. Document #38.

IT IS SO ORDERED this 11th day of September, 2014.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE